versus GTE. Counsel. Thank you, Your Honor. Gerald Serlin on behalf of George McGinest. Under the Full Faith and Credit Act, a federal court must give preclusive effect to a state court judgment. Notably, however, under California, like in the Ninth Circuit, the courts recognize an exception, and that exception is waiver. The general rule precluding claim splitting does not apply. The parties have agreed, in terms or in effect, that the plaintiff may split his claim where the defendant has acquiesced therein. Tell me if I've got the facts right. I'm not sure I do. He filed state claims in the state court, federal claims in the federal court. Correct. Didn't mix them, so the state case couldn't be removed. Correct. The state case ended in the trial court, but it wasn't completely over until the state Supreme Court denied review. Have I got that right? That is correct, Your Honor. And at that time, GTE or Verizon or whatever it is, asserted race judicata? Yes, Your Honor. You've obviously skipped over the fact that summary judgment was entered on behalf of GTE in the federal court as well, and this body, this court, reversed finding that there were disputed issues of material fact on the harassment claim and the discrimination claim, and so remanded the matter for trial. Yes, I did. I was just trying to lay out the timing. So after the end of the circuit, after this court ruled, at that juncture, the state court of appeal also ruled but came out with a contrary decision. It was based on the fact that the state court of appeal entered, affirmed the judgment of the trial court that GTE wound up with a defense verdict and then sought to apply the doctrine of race judicata in the federal court. But the state appellate court followed the retaliation ruling of the Ninth Circuit, did it not? The state court of appeal... Did it provide a preclusive effect? Yes, it did. The state court expressly asked what effect the Ninth Circuit's ruling on the retaliation had, and we explained that that aspect of Mr. McInnis's case was now final. The state court then followed suit and said, you're precluded from receiving, we're bound by the federal court decision. Interestingly enough, the state court then refused to, or declined to, consider outwardly the Ninth Circuit's ruling with regard to harassment and or discrimination. The opinion is conspicuously silent, and so it seems as though, as near as we can tell, no heed was paid to it. And which is actually curious because obviously the Title VII and FEHA are related statutes, and FEHA is modeled on Title VII, and so therefore the state courts have found that the federal rulings are compelling, although not necessarily binding. And yet there is no citation to the federal decision in the state court decision. They obviously didn't like it. They were a little concerned with a bit of... Well, you have a little experience with this case. I remember it well, and I remember the fact that the state case was pending at the time we heard argument. The state appeal was pending. It too was pending, and... In fact, I think we had some discussion about it, if I'm not mistaken. Unfortunately, that day I was unavailable. I was in Washington, D.C. actually, before the U.S. Supreme Court, and so trial counsel was standing in in my stead. But what happened then, this decision issued about at least a month or two before the state court ruled, and so therein lies the rub. The state court went one way, this court went another way. But what... You know, you're correct. I mean, in normal circumstances, this would be race... race judicata would apply to this case, and you seem to concede that. And the only argument you make is that it's either waiver... The only argument we make is waiver, basically. And your argument is not that there was an explicit agreement, but that there was acquiescence. That's correct, Your Honor. You let that the party... that the two cases proceeded on parallel tracks, without one or the other, you know, objecting. But, you know, technically they couldn't have objected on race judicata grounds, because the state court was not final. It's true. The state court decision wasn't yet final. However, there are many different mechanisms that they could have invoked to establish that they were not acquiescing in the parallel tracks. For example, seeking a stay in the federal court until resolution of the state court mattered. They could have asserted an affirmative defense of race judicata. Granted, it would have been premature, but at least they would have been signaling to counsel that... I don't understand that. I don't understand what you just said. It seems to me, if I remember stay law correctly, they could not have obtained the stay of the state proceeding. And also, they could not properly assert a race judicata defense in federal court, because there was no final judgment in the state court. Your Honor, I've just been violative of the rules. Your Honor, I was suggesting that a stay could have been sought here in the federal court under the Colorado River Doctrine. Colorado River Doctrine is rarely invoked, though. But no effort was made to invoke it. There was no effort to seek to stay. Are you saying they could have done two things, both of which would have been futile, but I would never have realized, unless they had done one of these futile things, that they would have had a judgment to be the end of it? Well, Your Honor, I take issue whether it would necessarily have been futile. Having never tried, it's a little premature to judge what the result would have been. But what we're arguing is that they allowed both tracts to proceed. Okay, race judicata. Let's take that. You can raise it by a paragraph in your answer asserting race judicata or by a motion to dismiss. So let's say you do a motion to dismiss race judicata. Defense, no final judgment in state court. Defense wins. Isn't that open and shut? At that juncture, yes, Your Honor. However, at least once again, they have to, GTE had to somehow go on record that they were at least not interested in proceeding on parallel tracts. And what's interesting is a section in their appellee's brief. Why? What does it matter what they want? I wouldn't think their feelings would count. Well, to the extent that they are acquiescing in parallel litigation, if you look at the purpose behind race judicata, and that is to prevent harassment of a defendant, subjecting a defendant to the same lawsuit, two different venues, then it's incumbent upon them to acknowledge or to say, we don't want to be subject to. But you're the plaintiff. You're the plaintiff. You started the two cases in the two different forums. Absolutely correct, Your Honor. However, at that point, it was incumbent upon GTE to go on record and say, we don't want to see the parallel tracts running. They could have made, as I said... What you're unhappy about is that you didn't get a jury trial, right? That's correct, Your Honor. Alright. But after the Ninth Circuit sent the case back, you could have dropped your state case and tried your federal case to a jury in the federal court. Could you not? No, we could not, Your Honor, because at that point, a judgment had already been rendered on summary judgment in the state court. And if we had dismissed that action, then it would have gone final. And so we would not have been in a position to dismiss that action. Your Honor... Maybe, would you back up for me for just a moment, though, to the beginning? Why would you split your claims? My understanding... Explain to me the theory behind that. You wanted to stay out of federal court, but then you... I mean, I understand. Well, I don't understand. Enlighten me. Trial counsel was concerned because the federal statute of limitations, because of the time the EEOC complaint charge was filed, yielded a different length of statute of limitations in terms of reaching back for misconduct. There was the DFEH charge was filed approximately two years later. The notion was to keep these matters separate, running on separate tracks, because they conceivably reached a different conduct or misconduct. And additionally, it was felt that the procedures that were available in the state court were more favorable to my client, Mr. McGinnis. And so what I did want to point out is that in the appellee's brief, they acknowledged that they were in favor of the two tracks running parallel. They weren't... What they were interested in doing was just waiting for the outcome in one matter, and then relying upon the doctrine of res judicata in whichever forum, so long as they received a defense verdict. I don't see what's the matter with that. You start the case as two separate cases, one in state court and one in federal court. From their point of view, they can't do anything about it. They might not like spending all the money to defend in two different courts instead of one court, but there's nothing they can do about it. And then once they win in one place, they try to take advantage of the win in the other, just as you would. The waiver would come about if there had been something they should have and could have done, and they didn't, like putting in an answer, a res judicata defense, but they couldn't because of the lack of finality. I don't see what's the matter with it. Well, Your Honor, I take issue that there was nothing that they could do. I do believe that they could have made a motion to stay the federal litigation. The state litigation was filed first, and there... I thought we had all these cases about duty to sit, duty to proceed, that you can't just stay the federal litigation while the state litigation's going on. Well, Your Honor, again, what I contend is that they allowed... They acquiesced in the parallel tracts. They made no effort to stop the parallel tracts. Whether those efforts would have been successful or not, they allowed them to both proceed. This court adheres to California state law in terms of resolution of applications of the doctrine of res judicata. California has adopted the restatement of law, which is section 26 of the restatement, and the restatement adopts the notion that acquiescence constitutes waiver, and that's precisely what happened here. Thank you, Counsel. Thank you, Your Honor. Good morning. Thank you. Thomas Brown for GTE, now known as Verizon. I listened with interest to what I should or could have done with respect to expressing displeasure or dissatisfaction with this case proceeding on two tracts. I will assure you, sitting to my right at the table is Larry Valdivieso, who's an in house attorney at GTE, and he was never too pleased that there were parallel actions because of the amount of money that we were spending in both. I did some research and concluded I could not stay the federal court action, and reluctantly, we proceeded on both tracts. When the cases started out in the very beginning, how far along... Which got filed first? The state court action got filed a day before the federal court action, one day. And then in the district court, how did they proceed? In the superior court and the district court, did one get ahead of the other? Not really. We did an initial status conference report in the federal court. We had an initial status conference in the state court. The only thing we... And then we had a discussion about why we were in two tracts. And I was asked to give up GTE's right to have the Title VII action proceed in federal court. Mr. Sherwin just said that they thought the state court forum was more favorable to that. As I'm sure your honors know, in state court, plaintiff, or either party for that matter, needs a unanimous jury. That's not the case. Excuse me, they need a 9-3 verdict in state court to be unanimous in federal. And with a smaller jury. Yes. And I also happen to think that the jury pool is better in federal court. And Mr. Valdivieso and I discussed that at some length, and we decided we weren't willing to waive GTE's right to proceed in federal court. Mr. Sherwin and his client decided they didn't wanna waive their right to bring their state court claims in state court. But I'm at a loss to comprehend how anyone can say that we waived our right. And in fact, if you'd listen carefully to what he said, we said specifically, we thought we were gonna win in both forums. We hoped we'd get the case to a trial in federal court first, but we made it clear wherever we'd won, we were then gonna say to the other forum that it was race judicata. So how anybody can say we waived is beyond my comprehension. And also, Judge Christina Snyder, especially in footnote five of her opinion, set forth exactly the chronology. I remember... Mr. Serlin wasn't here. Yeah, I remember that. I was, and we had a very heated exchange about my view of the law, and you had a contrary view of the law, which I respect. You felt that there were material issues of fact. It was almost five weeks to the day where I went in front of a California state panel after your decision came down, and to be very, very honest with you at that point in time, I thought that was a futile appearance. I expected them to come to the same conclusion you did. And it's also, I think, unfair and not accurate to say that that panel ignored what this court did. In fact, they did exactly the right thing. They followed what you found with respect to retaliation, because they felt it wouldn't be... It's not consistent with the integrity of judicial system to have inconsistent results in two forums. That's correct. I think... I think what that panel did is what this panel should do, with all due respect. There are specific findings under state law that the discrimination claims and the harassment claims are invalid. They made findings there was no discrimination. They made findings there was no harassment. They're... Mr. McGinnis and his attorneys are now asking for the right to go in front of a Federal court jury and ask that Federal court jury to make inconsistent findings. That... Well, you know, when you have two separate sovereign systems, I mean, that's possible. That may be, except... That is possible, because this claim does arise under Title VII. It does, but... It is, you know, it's contemplated. You could have a result here that's different. It happens, you know, in the criminal side, it happens. It may happen in the criminal side, but it shouldn't happen where you've got the same claims being adjudicated... Well, they're not really the same claims, because one arises under Federal law and one arises under state law. But they remain discrimination and harassment claims. And Mr. Serlin's correct. There's harmony between the two statutes. There is harmony, but they're not identical. I don't disagree with that, Your Honor. But I do think that the Federal court should tread lightly before it ignores... Well, there's no... There really... He even concedes this, I think, in his paperwork. There is no doubt that race judicata does apply. Well, okay... And on the surface, you meet it. The only question is whether there was waiver here. That's it. That's the bottom line. I'm not sure that your failure to... You couldn't... First of all, you start off with the right foot, because there's no way you could have raised race judicata in the district court. You never would have gotten beyond first base with that, because the state court wasn't fine. I think it's even worse... If I had put in my answer, race judicata, before there's any judgment whatsoever, I think I would have been in violation of the rule of law. If you can file a hypothetical answer in federal pleadings, isn't that true? It is, Your Honor, but I guess it's difficult for me to... I'm not suggesting you should have, but I do think you should be aware that the pleadings can be hypothetical under certain circumstances. I understand that, but I, at that point in time, wasn't prescient enough to know which was gonna end first, and to suggest... I wanna ask you a different question. We've talked about race judicata. We have both claim preclusion and issue preclusion here, do we not? I believe we do, Your Honor. Isn't there some Ninth Circuit law that says that issue preclusion can be raised by the court itself, and has done so? I think Judge Snyder, in fact, did that, in her opinion, if you look at it. That's exactly what she did. And she made a finding to the effect that they were the identical issues, factually and legally. Well, factually they may be identical, but they are different statutes. I understand that, but I do believe if you look at them closely and study them, they are designed to be interpreted in harmony, and it makes no sense... No, the California Supreme Court doesn't always follow federal law. That's correct. They have taken their own path. As a general rule... And sometimes more generous than Title VII. You anticipated what I was going to say. That's correct. That's what the irony is here. As a general rule, it's usually the California Supreme Court that is more generous to plaintiffs. Yes, that's right. So here we've got a situation where that forum, which is traditionally more generous to plaintiffs, has analyzed these facts under its more generous standard, and has concluded that the plaintiffs cannot... Well, you're talking a little bit different, though, when you talk about the standard that was used here. Both forums are dealing with whether there was a genuine tribal issue of fact, summary judgment, and we saw it differently, they saw it differently. They weren't bound by what we said. I respect that. And many times we're not bound by what they say about federal law. And that's just the way it is. We have two separate sovereigns, and it is indeed... If the judgment is final, we owe them full faith and credit, and they do the same under their system when the judgment is final. But, you know, it is possible with two separate sovereigns that you're going to end up with different verdicts, different results. It is possible, and it is contemplated. Otherwise, you wouldn't have it. I think, Your Honor, the only thing I disagree with what you just said is, if you look closely at what the appellate court did, and you say it wasn't bound by what you did, if you look at the slip opinion at page nine, where they talk about the retaliation claim... No, no, no. No, but I should have been more precise. They weren't bound by what we said with respect... Where we found a genuine tribal issue of fact, they weren't bound by that determination in their assessment of the evidence before them. That's correct. And they specifically so found. But they did ask, and as Mr. Serlin contended, they asked both parties to brief the effect of this court's prior opinion on what they were about to do. And I think both parties agreed at that point in time that with respect to retaliation, there had been a specific finding that there was none, and therefore, the state court was bound by that. Plaintiffs, for its part, said that you made a finding to the effect that there were disputed issues of material fact. We said, you did do that, but they weren't bound by it. That's correct. And then they did a very lengthy and precise analysis, which I'm sure Your Honor has read. I did. And they found that over the period of 25-some years, the incidents in question were sporadic and didn't rise to the level necessary to show either discrimination or harassment. And it seems to me that it would be a travesty to the justice system to now be in a situation where a federal jury is going to be asked to ignore the findings that that court made, which were affirmed by the California Supreme Court, on the identical factual issues. I will agree with you that there are different legal standards with respect to adjudicating those identical factual issues. But as Your Honor has conceded, usually it's the state that is more employee-friendly. So we're in a situation where that body of law, which is more employee-friendly, has been analyzed by both the appellate court and the California Supreme Court, both of which have concluded... Let's assume that, you know, in these early status conferences in the federal court, the plaintiff asked to stay the federal action. That would have been fine. And you said, no, we want to go ahead. Plaintiff says, well, we're only going to go ahead if they're willing to waive any race judicata claim. And you said, okay, we'll agree to waive any race judicata claim. Your Honor, I'm sure if that, as I said, it is possible here to have two different results. It is possible. That's all I want you to acknowledge. I acknowledge that. But here's what I want you to acknowledge, the irony of this situation. Yes, I do. Because look, the plaintiff wanted a state court determination. No, wait a minute. If, when we had taken, when the three-judge panel here in the federal court had heard the summary judgment motion, the appeal, after the state court of appeal had rendered its judgment and it affirmed like it did, I suspect that the outcome in the federal court may have been different. I would think so. I'd like to think that. And I remember that well. You were sitting over here this, that time, not where you're sitting now. That was three years, that was four years ago. I remember it quite well, Your Honor. I walked out of here knowing that the result that was going to come from this panel. But I'll go back to what I had said before. Let's look at what you're saying and what the plaintiffs say. Plaintiffs wanted everything to proceed in state court. Now they don't want it to proceed in state court because they don't like the outcome. They don't like the outcome. That's where, you know, they've got a hard argument here, and I'll give you the answer. There's no prejudice whatsoever. They got exactly what they wanted. But now they're going to go. The problem is they don't identify where the prejudice is. That was exactly what I was getting at. There is no prejudice and can be no prejudice. Because if I had given away the right of GTE to have Title VII claims heard in federal court, this case would never have been published. Because the California State Supreme Court would have affirmed what the appellate court did on the grant of summary judgment. We would never be here. I think that they're asking you to reward what is gamesmanship at its best. They file in state court. They file in federal court. If you put the complaints side by side, they're virtually identical. Well, they claim that there was a different time period covered. I remember that when they first told me that. You know, I've been doing this for 30 some years. I hate to admit that I'm that old. I don't claim to be the pope. I'm not infallible. I couldn't see it then and I don't see it now. Because of the doctrine of continuing violation. Are there any questions that I can? Thank you, counsel. Thank you. We used up your time, but if you want to take 30 seconds, go ahead. The only issue I wanted to quickly address was the collateral estoppel issue. That was not raised by GTE in its motion for summary judgment, and nor did the district court rely on it in its ruling. And so I don't believe it would be appropriate for this court to render a decision on that basis. But to the extent that this court is considering the application of that doctrine, I believe that this court should also consider, again, the restatement, which allows an exception to the application of the rule, which the exception exists, where the issue is one of law and a new determination is warranted to avoid inequitable administration of the law. Here, we definitely have an inequitable administration of the law, where we have a Ninth Circuit decision which rules in one way, construing the evidence, and we have a state court decision, which doesn't even at least overtly recognize. The state court wasn't bound by the federal court's determination on the tribal issue of fact. No, it's not. So they're separate. They are due respect. They are entitled to come to a different opinion, a different result. However, federal decisions interpreting parallel statutes under California state law are deemed compelling. And if the state court is forced, should at least at that point be forced to address what should have been a compelling decision. I notice that they didn't publish their decision. No, they did not. And we did file a petition for review, which was then subsequently denied. That's correct. Unless this court has any questions. Thank you, counsel. Thank you. Thank you, Alex. Guinness v. GTE is submitted. Next is Broaders v. County of Ventura.
judges: Kleinfeld, Paez, Hart